UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| BRUCE SHERMAN,<br><br>           Plaintiff,<br><br>v.<br><br>SEACOR HOLDINGS INC., CHARLES FABRIKANT, DAVID R. BERZ, GAIL B. HARRIS, OIVIND LORENTZEN, CHRISTOPHER P. PAPOURAS, and DAVID M. SCHIZER,<br><br>           Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Bruce Sherman ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This is an action brought by Plaintiff against SEACOR Holdings Inc. ("SEACOR" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which SEACOR will be acquired by American Industrial Partners Capital Fund VII, L.P. ("AIP")

through its affiliates Safari Parent, Inc. ("Parent") and Safari Merger Subsidiary, Inc. ("Purchaser") (the "Proposed Transaction").

2. On December 7, 2020, SEACOR issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated December 4, 2020, to sell SEACOR to AIP.  Under the terms of the Merger Agreement, AIP will acquire all outstanding shares of SEACOR for $41.50 in cash per share of SEACOR common stock (the "Offer Price").  Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on December 18, 2020.  The Tender Offer is scheduled to expire at one minute after 11:59 p.m. Eastern Time on January 20, 2021.  The Proposed Transaction is valued at approximately $1 billion.

3. On December 18, 2020, SEACOR filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that SEACOR stockholders tender their shares in favor of the Tender Offer, omits or misrepresents material information concerning, among other things: (i) SEACOR management's financial projections, relied upon by the Company's financial advisor, Foros Securities LLC ("Foros"), in its financial analyses as well as the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Foros; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest SEACOR's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange

Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  SEACOR's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SEACOR.

9.      Defendant SEACOR is a Delaware corporation with its principal executive offices located at 2200 Eller Drive, P.O. Box 13038, Fort Lauderdale, Florida 33316.  SEACOR is a diversified holding company with interests in domestic and international transportation and

logistics, crisis and emergency management, and clean fuel and power solutions. SEACOR's common stock is traded on the New York Stock Exchange under the ticker symbol "CKH."

10. Defendant Charles Fabrikant ("Fabrikant") is Executive Chairman of the Board, the Company's Chief Executive Officer ("CEO"), and has been a director of the Company since December 1989.

11. Defendant David R. Berz ("Berz") has been Lead Independent Director since June 2017, and has been a director of the Company since February 2014.

12. Defendant Gail B. Harris ("Harris") has been a director of the Company since April 2020.

13. Defendant Oivind Lorentzen ("Lorentzen") is Vice Chairman of the Board and has been a director of the Company since August 2001. Defendant Lorentzen previously served as CEO of the Company from September 2010 through February 2015.

14. Defendant Christopher P. Papouras ("Papouras") has been a director of the Company since March 2018.

15. Defendant David M. Schizer ("Schizer") has been a director of the Company since November 2014.

16. Defendants identified in paragraphs 10 to 15 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17. AIP is an operationally oriented private equity firm that makes control investments in industrial businesses serving domestic and global markets. The firm has deep roots in the industrial economy and has been active in private equity investing since 1989. To date, AIP has completed over 100 transactions and currently has more than $7 billion of assets under

4

management on behalf of leading pension, endowment and financial institutions.

18. Parent is a Delaware corporation controlled by an affiliate of AIP.

19. Purchaser is a Delaware corporation and wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Company Background

20. SEACOR is a diversified holding company with interests in domestic and international transportation and logistics, crisis and emergency management, and clean fuel and power solutions. SEACOR conducts its activities in the following reporting segments: Ocean Transportation & Logistics Services ("Ocean Services"); Inland Transportation & Logistics Services ("Inland Services"); Witt O'Brien's LLC ("Witt O'Brien's"); and Other.

21. The Ocean Services segment owns and operates a diversified fleet of bulk transportation, port and infrastructure, and logistics assets, including U.S. coastwise eligible vessels and vessels trading internationally. The Inland Services segment provides customer supply chain solutions with its domestic river transportation equipment, fleeting services and high-speed multi-modal terminal locations adjacent to and along the U.S. Inland Waterways, primarily in the St. Louis, Memphis and Baton Rouge areas. The Witt O'Brien's segment provides crisis and emergency management services for both the public and private sectors. The Other segment includes CLEANCOR Energy Solutions LLC ("Cleancor"), which designs, develops and maintains alternative energy and power solutions.

22. On November 13, 2020, SEACOR announced its third quarter 2020 financial results and business highlights. Defendant Fabrikant commented on the Company's third quarter results, stating in relevant part:

> All of our businesses have continued to operate during these challenging times. We recently, and very carefully, reopened several of our office locations. Fulfilling our commitment to, and success in providing our customers uninterrupted, quality

> service, is only possible due to the dedication and hard work - and flexibility - of our more than 2,000 employees. It is their safety and well-being which remains our top priority.
>
> ***
>
> Demand for freight services into the Bahamas and Turks & Caicos started to pick up in July. SEACOR Island Lines is positioned to perform even better in the fourth quarter as the Bahamian government is expected to reopen its borders on November 1st in time for the seasonal spike in tourist activity.
>
> Additional good news is China increased imports of U.S. agricultural products late in the third quarter pushing barge rates higher. I hope the better margins will be sustained as exports to China and other destinations pick up with the seasonal harvest.
>
> By way of an update, there are several post quarter events to report. SEA-Vista was able to secure a new multiyear time charter for a chemical-suited tanker, adding approximately $45 million of revenue backlog to the almost $200 million we had as of September 30.
>
> Our inland business, SCF, was also successful in finalizing terms to acquire a strategic center gulf fleeting location. This adds approximately 220 fleeting spaces strategically positioned near grain export elevators allowing us to expedite cycle times of our equipment while improving service to our customers. The acquisition is expected to close in early November. Additionally, SCF, supported by three Port Authorities in the St. Louis region, was awarded a $21 million grant for rail expansion, efficiency upgrades, and safety projects at several of our SCF Lewis & Clark terminal locations.

**The Proposed Transaction**

23.     On December 7, 2020, SEACOR issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> Fort Lauderdale, Fla., Dec. 07, 2020 -- SEACOR Holdings Inc. (NYSE:CKH) ("SEACOR" or the "Company") today announced that it has entered into a definitive agreement with an affiliate of American Industrial Partners ("AIP"), a New York-based private equity firm that focuses on buying, improving, and growing industrial businesses, to take the company private. The all-cash transaction is valued at approximately $1 billion, including net debt.
>
> Under the terms of the agreement, AIP will commence a tender offer to acquire all outstanding shares of SEACOR for $41.50 per share in cash. This per share purchase price represents a premium of approximately 14% to the Company's

6

closing stock price on December 4, 2020, the last trading day prior to today's announcement, and a premium of approximately 31% over the 90-calendar day volume weighted average price. The agreement was approved by SEACOR's board of directors and they recommend that SEACOR stockholders tender their shares in the offer.

"This transaction is an exciting next step for SEACOR, delivering stockholders an immediate and meaningful premium for their shares and providing the Company with access to additional growth capital and financial flexibility," said Charles Fabrikant, Executive Chairman and Chief Executive Officer of SEACOR. "AIP is an ideal partner for SEACOR that recognizes the value of its unique, diversified platform and management looks forward to leveraging their investment and operational expertise in pursuing industry consolidation and other growth opportunities across all our businesses. AIP has demonstrated success investing in and growing industrial, services, and marine businesses, and I am confident our employees and customers will greatly benefit from this partnership."

"We are thrilled to partner with SEACOR's talented management team and welcome its family of businesses and employees into the American Industrial Partners portfolio," said Jason Perri, Partner of AIP. "SEACOR has demonstrated a unique combination of proven investment acumen and a track record as a first-class operator of businesses across various end markets, including the Jones Act marine space. These attributes align perfectly with AIP's core skill sets and mission, and we are excited to help usher SEACOR into its next phase of growth."

The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least two-thirds of the total number of SEACOR's outstanding shares, the expiration or termination of the antitrust waiting period, and other customary conditions. Following the successful completion of the tender offer, AIP will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The proposed transaction is expected to close by the end of the first quarter of 2021. Following the closing of the transaction, Charles Fabrikant will step down from his executive positions and Eric Fabrikant, SEACOR's current Chief Operating Officer, will assume the role of Chief Executive Officer.

Charles Fabrikant continued, "It has been an honor to work with a talented group of associates. I believe that SEACOR is well positioned to reach its next phase of growth under the leadership of Eric and the rest of the senior team, working in partnership with AIP."

**Insiders' Interests in the Proposed Transaction**

24.     SEACOR insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are

conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SEACOR.

25. Notably, certain Company insiders have secured positions for themselves with the surviving Company. Specifically, Eric Fabrikant, Defendant Fabrikant's son and the Company's current Chief Operating Officer ("COO"), will assume the role of CEO upon closing of the Proposed Transaction.

26. Additionally, the Company has also approved a retention pool not to exceed $4.5 million for the benefit of Company management and certain key employees, to be paid 50% upon closing of the Proposed Transaction and 50% in December of 2021.

27. Further, Company insiders stand to reap substantial financial benefits for securing the deal with AIP. The following table summarizes the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name of Executive Officer or Director | Number of Shares | Aggregate Cash Consideration for Shares ($) |
|---|---|---|
| Charles Fabrikant | 876,493 | 36,374,460 |
| Eric Fabrikant | 48,394 | 2,008,351 |
| William C. Long | 9,019 | 374,289 |
| Bruce Weins | 5,951 | 246,967 |
| David R. Berz | 3,800 | 157,700 |
| Gail Harris | 375 | 15,563 |
| Oivind Lorentzen | 49,316 | 2,046,614 |
| Christopher P. Papouras | 1,375 | 57,063 |
| David M. Schizer | 3,125 | 129,688 |

28. Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options, as well as unvested Company restricted shares held by Company insiders will be converted into the right to receive cash payments, as set forth in the following tables:

| Name of Executive Officer or Director | Vested Company Options | | | Unvested Company Options | | | Aggregate Outstanding Company Options |
|---|---|---|---|---|---|---|---|
| | Shares Underlying Vested Company Options | Weighted Average Exercise Price ($) | Aggregate Vested Company Option Payment ($)(1) | Shares Underlying Unvested Company Options | Weighted Average Exercise Price ($) | Aggregate Unvested Company Option Payment ($)(1) | Aggregate Company Option Payment ($)(1) |
| Charles Fabrikant | 330,894 | 42.80 | 681,762 | 229,396 | 39.61 | 885,324 | 1,567,086 |
| Eric Fabrikant | 113,366 | 41.81 | 278,274 | 67,702 | 38.98 | 290,386 | 568,660 |
| William C. Long | 10,926 | 43.05 | 18,706 | 18,772 | 38.67 | 88,021 | 106,727 |
| Bruce Weins | 40,872 | 43.31 | 90,322 | 23,960 | 41.56 | 65,808 | 156,130 |
| David R. Berz | 24,112 | 43.90 | 39,837 | 3,000 | 26.82 | 44,040 | 83,877 |
| Gail Harris | -- | -- | -- | 3,000 | 26.82 | 44,040 | 44,040 |
| Oivind Lorentzen | 141,107 | 48.50 | -- | 3,000 | 26.82 | 44,040 | 44,040 |
| Christopher P. Papouras | 6,000 | 48.01 | -- | 3,000 | 26.82 | 44,040 | 44,040 |
| David M. Schizer | 20,625 | 42.58 | 39,837 | 3,000 | 26.82 | 44,040 | 83,877 |

| | Unvested Company Restricted Shares | |
|---|---|---|
| | Number of Company Restricted Shares | Aggregate Payment ($)(1) |
| Charles Fabrikant | 63,000 | 2,614,500 |
| Eric Fabrikant | 54,000 | 2,241,000 |
| William C. Long | 19,800 | 821,700 |
| Bruce Weins | 18,900 | 784,350 |

29. Finally, if they are terminated in connection with the Proposed Transaction, SEACOR's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Golden Parachute Compensation Table | | |
|---|---|---|---|
| | Cash($) (1) | Equity ($) (2) | Total ($) |
| Charles Fabrikant | 2,046,767 | 4,181,586 | 6,228,353 |
| Eric Fabrikant | 1,698,769 | 2,809,660 | 4,508,429 |
| William C. Long | 585,606 | 928,427 | 1,514,033 |
| Bruce Weins | 474,817 | 940,480 | 1,415,297 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

28. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to SEACOR's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's

9

stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

29. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SEACOR management's financial projections, relied upon by the Company's financial advisor Foros in its financial analyses, as well as the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Foros; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning SEACOR Management's Financial Projections and Foros' Financial Analyses***

30. The Recommendation Statement omits material information regarding Company management's financial projections relied upon by Foros for its financial analyses.

31. For example, the Recommendation Statement fails to disclose all line items underlying the calculation of unlevered free cash flow for fiscal years 2020-2024 and the terminal year, including (a) unlevered earnings, (b) interest expense, (c) tax, (d) stock-based compensation expenses, (e) depreciation and amortization, (f) payments and proceeds related to acquisitions and divestitures, and (g) net working capital.

32. The Recommendation Statement also sets forth that "[t]he projections reflect a risk-adjusted outlook, based on certain internal assumptions. . . ." Recommendation Statement at 25. Yet, the Recommendation Statement fails to disclose the un-risked projections.

33. The Recommendation Statement also fails to disclose material information concerning the data and inputs underlying Foros' financial analyses.

34. The Recommendation Statement describes Foros' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Foros' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, SEACOR's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Foros' fairness opinion in determining whether to tender their shares in the Tender Offer or seek appraisal.

35. With respect to Foros' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the terminal value of the Company; (ii) quantification of the inputs and assumptions underlying the discount rate of 10.0%; and (iii) the Company's implied terminal year EBITDA multiples.

36. With respect to Foros' *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose: (i) the individual multiples and financial metrics for each transaction analyzed; (ii) the Company's cash as of September 30, 2020; (iii) the value of the Company's unconsolidated joint venture interests; (iv) the present value of the projected working capital normalization related to the Company's Witt O'Brien's business.

37. The omission of this information renders the statements in the "Management Projections" and "Opinion of Foros Securities LLC" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

38. The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction.

39. The Recommendation Statement sets forth that "[a] total of 14 parties, including AIP executed non-disclosure agreements with the Company and received access to a confidential information package. . . ." *Id.* at 14. Yet, the Recommendation Statement fails to disclose the

11

terms of the non-disclosure agreements, including whether the non-disclosure agreements executed by these potential counterparties include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any of these potential counterparties from submitting a topping bid for the Company.

40. The failure to disclose the existence of DADW provisions creates the false impression that any of the potential bidders who entered into confidentiality agreements could make a superior proposal for the Company. If those confidentiality agreements contain DADW provisions, then those potential bidders can only make a superior proposal by (i) breaching the confidentiality agreement—as in order to make the superior proposal, they would need to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Recommendation Statement.

41. Any reasonable SEACOR stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

42. The omission of this information renders the statements in the "Background of the Offer and the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

43. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

44. For example, the Recommendation Statement sets forth that:

On November 19, 2020, the members of the Company Board, other than Mr. C. Fabrikant, held a special meeting, with representatives of Milbank present, to discuss AIP's bid and the timing and next steps for the Company's ongoing strategic process. The Company Board had elected to hold a meeting without Mr.

12

>C. Fabrikant present in light of the potential continuing role of Mr. C. Fabrikant's son, Mr. E. Fabrikant, in the Company after the closing of the potential transaction, and the invitation from AIP for members of the management of the Company, including Mr. C. Fabrikant and his son, to potentially roll over their equity in the potential transaction, and any actual or perceived conflict of interest that might arise therefrom.

*Id.* at 16.  Yet, the Recommendation Statement fails to set forth when the Board and Company management, including defendant Fabrikant and Eric Fabrikant, first learned that Eric Fabrikant might have a continuing role in the combined company, which was subsequently confirmed.

45.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for SEACOR's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.     The omission of this information renders the statements in the "Background of the Offer and the Merger" and "Future Arrangements" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

47.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other SEACOR stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations
### of Section 14(d) of the Exchange Act and SEC Rule 14d-9

30. Plaintiff repeats all previous allegations as if set forth in full.

31. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting SEACOR stockholders to tender their shares in the Tender Offer.

32. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

33. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

34. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

35. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of SEACOR, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable

powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

36. Plaintiff repeats all previous allegations as if set forth in full.

37. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

38. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

39. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. The Individual Defendants acted as controlling persons of SEACOR within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of SEACOR and participation in or awareness of the Company's operations

or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

44. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

45. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SEACOR, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 29, 2020

**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*